UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BONNIE HEATHER MILLER;
ROBERT WILLIAM ALLEN;
ADELLA DOZIER GRAY; and
ARKANSAS VOTERS FIRST                                              PLAINTIFFS

v.                                    No. 5:20-CV-05070

JOHN THURSTON, in his official
capacity as Secretary of State of Arkansas                        DEFENDANT

## OPINION AND ORDER

The worldwide COVID-19 pandemic, and the social distancing that is the current best tool to prevent uncontrolled spread of that virus among the population, give rise to the circumstances motivating this lawsuit.  Article 5, Section 1 of the Arkansas Constitution reserves to the people of Arkansas the power to propose by initiative petition state constitutional amendments that may be placed on the ballot for a given regular election, provided that at least four months before the election those petitions receive signed support from a number of registered Arkansas voters equaling at least ten percent of registered voters, a number determined by the votes cast in the preceding gubernatorial election.  Legislation supplementing this constitutional provision requires that signatures must be accompanied by the handwritten printed name, address, and birthdate of the petitioner, as well as the date of signing.  Ark. Code Ann. § 7-9-103(a)(1).

Plaintiff Bonnie Heather Miller alleges she is a registered Arkansas voter who wants to canvass for an initiative petition to amend the Arkansas Constitution.[1]  Plaintiffs Robert William

---

[1] Plaintiffs' initiative petition seeks to amend the Arkansas constitution in advance of postcensus decennial redistricting to require that federal and state redistricting be accomplished on a nonpartisan, non-gerrymandered basis by a commission of Arkansas registered voters who have not recently been in elected or appointed federal or state office, been registered lobbyists or officers of a political party, been employees of registered lobbyists, political parties, political campaign

Allen and Adella Dozier Gray allege they are registered Arkansas voters who want to sign the same initiative petition. Plaintiff Arkansas Voters First ("AVF") alleges it is the sponsor responsible for the organization and submission of the initiative petition. These Plaintiffs argue that medical and legal guidance and restrictions issued by the Centers for Disease Control, the State of Arkansas, treating medical personnel, and continuing care retirement facilities make it unduly burdensome for them to exercise their First Amendment rights, as incorporated against the State of Arkansas by the Fourteenth Amendment, while also complying with the State's initiative petition requirements. Plaintiffs have sued Defendant John Thurston in his official capacity as Secretary of State for the State of Arkansas to enjoin him from enforcing those requirements that Plaintiffs argue violate their constitutional rights.

Before the Court is Plaintiffs' motion (Doc. 5) for a preliminary injunction and brief (Doc. 7) in support. The Secretary of State filed a response (Doc. 31) in opposition, and Plaintiffs filed a reply (Doc. 32). At the Court's request, the parties also filed a joint statement of stipulated facts (Doc. 33) that they agree apply to the Court's decision on the motion for a preliminary injunction. Plaintiffs separately filed a statement of facts (Doc. 34) to which the Secretary of State did not stipulate. In order to expedite the hearing on the motion for preliminary injunction, the Court did not require a response to this statement of facts and informed the parties that these facts would not be deemed admitted on the basis of any decision by the Secretary of State not to respond. On May 19, 2020, the Court held a remote hearing (Doc. 39) using Zoom videoconferencing software. Prior to the hearing, the Court inquired whether either side believed additional factual

---

committees, or political action committees, or been closely related by blood or marriage to anyone who has been. *See* "The Arkansas Citizens' Redistricting Commission Amendment," available at https://arvotersfirst.org/ (select "Amendment Language" hyperlink at top of page [PDF]) (last accessed May 24, 2020).

development was necessary for resolution of the motion for a preliminary injunction, and each side indicated that only legal argument would be made.

Plaintiffs ask in their motion that the Court temporarily enjoin the Secretary of State from enforcing the State's initiative petition requirements by allowing Plaintiffs "to gather signatures electronically, to ease in-person witnessing and notarization requirements, and to lower the required number of signatures and extend the deadline for submission of signatures."  (Doc. 7, p. 2).  Plaintiffs propose terms for a preliminary injunction that they believe would allow them to exercise their First Amendment rights while they wait for final resolution on the merits in this Court.  Plaintiffs ask that the Court require the Secretary of State to accept an initiative petition filed with the supporting signatures of six percent of registered voters, rather than ten; filed by September 3, 2020, rather than July 3, 2020; supported by electronic signatures made outside the presence of a canvasser, rather than by in-person handwritten "wet" signatures; and without the need for canvassers to make an in-person affidavit in support of the petition.

The Secretary of State argues that Plaintiffs lack standing to challenge the State's initiative petition requirements and that the State's initiative petition requirements do not substantially restrict political discussion, and so do not infringe on Plaintiffs' First Amendment rights.

The motion for a preliminary injunction will be GRANTED IN PART as stated herein.

## I.      Standing

Before reaching the question of whether a preliminary injunction should issue and what it should enjoin, the Court must briefly address the Secretary of State's argument that Plaintiffs lack standing to challenge the State's initiative petition requirements.  Standing is a threshold jurisdictional issue in federal courts, and "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  If

Plaintiffs lack standing, the Court cannot proceed.  "A plaintiff invoking the jurisdiction of the court must demonstrate standing to sue by showing that she has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by the relief she seeks." *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017).  Standing typically requires plaintiffs at a minimum to have taken steps to attempt to satisfy required preconditions or follow certain procedures. *Bernbeck v. Gale*, 829 F.3d 643, 648 (8th Cir. 2016).  "A plaintiff's burden to establish standing depends on the stage of litigation, and 'at the pleading stage, general factual allegations may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Wieland v. U.S. Dep't of Health & Human Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (quoting *Lujan*, 504 U.S. at 561).

Plaintiffs have alleged a concrete, particularized, and imminent injury in fact.  Continued application of the State's initiative petition requirements to Plaintiffs' initiative petition during a pandemic and despite State guidance and law that make complying with those initiative petition requirements inadvisable and impracticable substantially burdens Plaintiffs' First Amendment rights.  The injury alleged is not merely speculative or hypothetical.  Plaintiff AVF has filed its proposed amendment with the Secretary of State and received a file-marked copy, allowing it to begin collecting signatures.  Plaintiffs Miller, Allen, and Gray allege they are aware of this particular initiative petition and want to circulate and support it so that they and others may vote on the initiative at issue during this November's regular election, but they cannot do so in the presence of another person.  The injury alleged is fairly traceable to the State, in that State initiative petition requirements prevent Plaintiffs from effectively circulating or signing the initiative petition while also complying with the social distancing encouraged, and in some cases required, by the State.  Finally, because the Secretary of State is the official responsible for determining

whether Plaintiffs' initiative petition complies with the initiative petition requirements, enjoining

him from continued application of the requirements Plaintiffs argue are unconstitutional is likely

to redress the injuries they have identified.  At the pleading stage of a lawsuit, this is certainly

enough.  Plaintiffs have standing to challenge the initiative petition requirements.

## II.    Preliminary Injunctive Relief

Plaintiffs ask the Court to enter a preliminary injunction against the Secretary of State that

would allow Plaintiffs to sign initiative petitions or gather signatures on initiative petitions during

the pendency of this lawsuit in a manner enabling Plaintiffs to maintain social distancing practices

intended to keep them and others safe during the COVID-19 pandemic, and that would require the

Secretary of State to accept those signatures as qualifying signatures on initiative petitions.

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat

of irreparable harm to the movant; (2) the state of balance between this harm and the injury that

granting the injunction will inflict on other parties litigant; (3) the probability that movant will

succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d

109, 114 (8th Cir. 1981).  As movants, Plaintiffs bear the burden of showing the *Dataphase* factors

weigh in their favor before an injunction can issue.  *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th

Cir. 2003).  "When a plaintiff has shown a likely violation of his or her First Amendment rights,

the other requirements for obtaining a preliminary injunction are generally deemed to have been

satisfied." *Minn. Citizens Concerned for Life v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012)

(quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam)).  An order

granting a preliminary injunction "must: (A) state the reasons why it issued; (B) state its terms

specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other

document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).

A.    *Dataphase* Factors

1.    **Likelihood of Success on the Merits**

Where a party seeks a preliminary injunction against "government action based on presumptively reasoned democratic processes," the party must show that it is likely to prevail on the merits. *Planned Parenthood Minn., N. Dak., S. Dak. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (explaining differences in application of *Dataphase* factors to preliminary injunctions involving government and private action).   The merits of this lawsuit will be determined by application of the *Anderson/Burdick* test, which requires the Court to "weigh the 'character and magnitude' of the burden the State's rule imposes on [First and Fourteenth Amendment] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983))).   "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Id.*; *see also Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001) (applying *Anderson/Burdick* test to petition circulation regulations); *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997) ("Absent some showing that the initiative process substantially restricts political discussion . . . *Meyer*['s heightened standard of review] is inapplicable.") (quoting *Biddulph v. Mortham*, 89 F.3d 1491, 1498 (11th Cir. 1996)); *Bernbeck v. Moore*, 126 F.3d 1114, 1116 (applying strict scrutiny where the effect of the statutes at issue was "a restriction of the people's constitutional right to express core political speech").

6

Plaintiffs challenge the application to their initiative petition of several different Arkansas requirements.  Plaintiffs have made a sufficient showing that the in-person signing and sworn affidavit requirements (as well as any additional requirements necessarily contingent upon these requirements) substantially restrict political discussion.  For those requirements, the Secretary of State has thus far failed to provide evidence or argument that would allow him at the merits stage to meet his burden under the heightened scrutiny the Court must apply, and so Plaintiffs have shown they are likely to succeed on the merits.  Plaintiffs have not yet shown at this stage that the other requirements substantially restrict political discussion, however, and so have failed to trigger any heightened scrutiny of those requirements.  Though Plaintiffs ultimately may succeed on the merits with respect to these requirements, because they have not yet demonstrated a likelihood of success, the Secretary of State will not be preliminarily enjoined.  The Court is mindful that "likely" success on the merits does not mean "certain" success on the merits.  None of these findings is final, and continued litigation may result in a different resolution to this lawsuit.

### a.    Number of Signatures

Binding precedent in this Circuit all but compels a finding that the number of signatures Arkansas requires for an initiative to be placed on the ballot does not substantially restrict political discussion.  *See Dobrovolny*, 126 F.3d at 1113.  To be clear, the COVID-19 pandemic and the social distancing measures the State has deployed in response have unquestionably limited Plaintiffs' ability to discuss, sign, or submit initiative petitions in sufficient number to obtain placement on the ballot.  But although a provision makes it difficult "to plan [an] initiative campaign and efficiently allocate . . . resources, the difficulty of the process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the circulation of petitions is not affected." *Id*.  That appears to be the case with respect to the number

of signatures required.  This requirement does not prevent a canvasser from communicating to a potential supporter, nor does it prevent that potential supporter from communicating his or her actual support by becoming a petitioner and signing the initiative petition.  As a result, this requirement is likely to be subject to the lowest level of review when the merits of this lawsuit are resolved, and the State likely will be found to have a reasonable, nondiscriminatory basis for the requirement—ensuring sufficiently broad support of an initiative petition by registered voters to justify its placement on the regular election ballot.

Plaintiffs have not met their burden at the preliminary injunction stage to show they are likely to succeed on the merits of this claim, and the first *Dataphase* factor precludes entry of a preliminary injunction requiring the Secretary of State to accept fewer signatures than required by the Arkansas constitution.

### b.  Deadline

A signature-supported initiative petition must be filed with the Secretary of State no less than four months before the regular election.  The parties identify no State-imposed limit on how far in advance of an election a canvasser may begin collecting signatures.  The deadline requirement in many respects is indistinguishable from the number of signatures requirement.  It does not restrict the manner in which ideas and political positions and support or opposition to both are communicated.  Like the number of signatures requirement, Plaintiffs have not convinced the Court that this initiative petition requirement imposes a substantial or severe burden on Plaintiffs' core political speech.  The passage of the deadline does not require the speech to end, but only requires that supporters of an initiative petition have submitted the initiative petition with sufficient support by that date to have it placed before voters at the regular election.  The parties have identified no reason why a canvasser could not continue to collect signatures on an initiative

petition, or why a petitioner who had not yet done so could not sign the initiative petition, in anticipation of the possible need for the post-deadline "cure" period. *Accord McDaniel v. Spencer*, 457 S.W.3d 641, 652–53 (Ark. 2015) (holding unconstitutional a provision that restricted canvassers from circulating initiative petitions and obtaining signatures during the period between filing the initiative petition with the Secretary of State and receiving a sufficiency determination from him or her). The initial filing deadline simply marks a point by which, in some cases, Plaintiffs' speech will no longer be effective to get an initiative before the voters in a particular election cycle.

To the extent the deadline can fairly be said to burden speech in light of the pandemic and attendant circumstances, Plaintiffs still have not convinced the Court that they are likely to prevail on the merits of this issue. That is, they have not yet persuaded the Court that the burden imposed by the deadline on their speech is severe enough to trigger the most strict scrutiny, and so even if some intermediate level of scrutiny applies to the State's present deadline requirement, Plaintiffs have not yet shown that the deadline will fail when that scrutiny is turned upon it. The format of speech at issue by its nature requires some deadline. Arkansas holds its regular election on one day. That day is preceded by a short period of early voting. Prior to election day and early voting, ballots must be finalized and distributed to the various counties, and to voters who have requested an absentee ballot. Before ballots are finalized and distributed, some initiative petitions with only a small number of disqualified signatures may have a period to cure that deficiency. Prior to that, the Secretary of State must have a short period to review petitioner signatures on an initiative petition to determine their sufficiency.

In short, even if a heightened level of scrutiny will apply at merits resolution, the State likely will be able to show at least a substantial or important governmental interest in some

deadline early enough to allow the pre-election process to play out.  Based on the evidence on this motion, the Court cannot find that the present deadline restricts speech more than necessary to further the State's interest.  *Cf. United States v. O'Brien*, 391 U.S. 367, 376–77 (1968) (setting out test for intermediate scrutiny of law that regulates conduct and incidentally burdens speech).  At best, Plaintiffs have shown a "fair chance" of success, but when State action is to be enjoined, a greater showing is necessary.  *Planned Parenthood Minn., N.D., S.D.*, 530 F.3d at 731–32.

Plaintiffs have not met their burden at the preliminary injunction stage to show they are likely to succeed on the merits of this claim, and the first *Dataphase* factor precludes entry of a preliminary injunction requiring the Secretary of State to accept initiative petitions submitted after the current deadline.

### c.    In-Person, Handwritten "Wet" Signatures and Sworn Affidavits

The State's initiative petition framework requires that petitioners must handwrite their personal identifying information (printed name, address, and date of birth), the date of signing, and their signatures onto initiative petition signature pages in the presence of a canvasser.  These original "wet" signature pages must be provided to the Secretary of State affixed to the initiative petition, and when the signed initiative petition is filed with the Secretary of State, it must be accompanied by an affidavit from the canvasser, sworn and signed in the presence of a notary public, that all signatures were made in the canvasser's presence by petitioners believed to be genuine registered voters.

Unlike the number and deadline requirements, these requirements directly affect the method or manner of speech engaged in by petitioners and canvassers and restrict the ways in which they can communicate with one another and petition the State.  Especially in light of a pandemic that necessitates social distancing between people to prevent its spread, and so precludes

in-person contact and communication, these collective requirements substantially and severely burden Plaintiffs' core political speech.  On the merits, the Court must review these requirements with strict scrutiny, which will require the Secretary of State to demonstrate both that the State has a compelling interest and that the requirements are narrowly tailored to reasonably achieve that interest.  *Bernbeck v. Moore*, 126 F.3d at 1116.

Though the Secretary of State suggests in briefing that the State has a compelling interest "in preventing fraud and maintaining the integrity of" the initiative petition process (Doc. 31, p. 27), he primarily focuses his opposition to this motion on arguing that no Plaintiff's speech is burdened, and therefore no heightened review applies, rather than on providing evidence or argument that would demonstrate that the State's interest is compelling or its requirements narrowly tailored.  Because the Secretary of State has put no supporting evidence of a compelling interest or narrow tailoring into the record, and has offered only limited justification for the State's initiative petition requirements, the Court's determination of whether Plaintiffs are likely to succeed on the merits is guided in large part by justifications and limitations that are the subject of other cases.

There is no evidence before the Court of fraud during previous initiative petitions. Furthermore, "the risk of fraud or corruption, or the appearance thereof, is more remote at the petition stage of an initiative than at the time of balloting."  *Meyer v. Grant*, 486 U.S. 414, 427 (1988).  Because of the caution with which this Court proceeds in preliminarily enjoining State action, however, it will assume for purposes of this motion that the State's identified interests will be sufficiently supported at the merits stage that those interests can be found to be "compelling." The Secretary of State likely can show that the handwritten "wet" signature page requirement is narrowly tailored to achieve the State's interest (or at least, the question will be close enough that

Plaintiffs have demonstrated only a fair chance of success), but the in-person requirements likely will not be found to be narrowly tailored to achieve the State's interests.

### i.      Handwritten "Wet" Signature Pages

The State requires handwritten signatures on initiative petitions to achieve its interest in preventing fraud and maintaining the integrity of the initiative petition process.  To verify "whether the petitioner is a legal voter, as is necessary for that person's signature to count toward the required total," *McDaniel*, 457 S.W.3d at 652, the State requires the signature to be accompanied by the petitioner's printed name, address, birth date, and the date of signing.  Ark. Code Ann. § 7-9-103.  These requirements substantially burden Plaintiffs' rights to engage in core political speech by limiting the manner in which petitioners may register their support for an initiative petition to handwriting.

However, the Secretary of State has a duty to verify that petitioners are registered voters and that petitioners' signatures are genuine, and it is likely that these interests will be found to be compelling, or at least sufficiently weighty to justify some burden on a petitioner's speech. Furthermore, requiring a petitioner to affix his or her handwritten signature and identifying information to an initiative petition (at least at this stage of litigation and in the absence of further factual development and legal argument), standing alone, seems to be a burden narrowly tailored to reasonably achieve the State's interest, even in light of the pandemic.

It is not that electronic signatures cannot similarly be determined to be genuine. In fact, electronic signatures are commonplace and accepted for all manner of official business, and not only by the State, but by this Court.  Counsel for Plaintiffs and the Secretary of State electronically signed the briefing on this very motion, and the Court has electronically signed this opinion and order.  The Court has many protections in place to ensure that attorneys' electronic signatures

(which are made by typing "/s/" followed by the signer's printed name) are genuine however, and these protections range from email notification to all parties when an electronically signed document is filed or entered to password protection on the various accounts used to file or enter electronically signed documents.

Plaintiffs suggest that requiring the Secretary of State to accept an electronic signature made using the DocuSign service and accompanied by a scanned image of the petitioner's State-issued photo identification would allow the Secretary of State to verify that electronic signatures are genuine.[2]  Plaintiffs have not demonstrated that electronic signatures created on a touchscreen or with a mouse or trackpad would be of sufficient quality to allow the Secretary of State to carry out his duty to determine whether a signature "is obviously not that of the purported petitioner" or "is illegible." Ark. Code Ann. § 7-9-126(c).  The Court is hesitant to approve a process through preliminary injunction that might result in a greater number of signatures being disqualified than is typical.  Rather than helping matters, the proposed addition of a photo identification to the initiative petition process makes it more burdensome.  Initiative petitions signed by the general public generally require neither the level of account security required by the DocuSign process nor the provision of photo identification to verify identification of the petitioner—and if they did, it seems plausible that those requirements would have a chilling effect that might severely burden petitioners' speech.  Providing the type of information (e.g., gender, physical appearance, race,

---

[2] DocuSign would allow a person to provide his or her typeface personal identifying information, and to make his or her "handwritten" signature with a finger or stylus on a touchscreen, or using a mouse or trackpad, and then for that information to be transmitted to AVF. DocuSign would also allow the petitioner to include an uploaded image of his or her State-issued photo identification to be associated with that information.  AVF would then print that information out on initiative petition signature pages to be filed with the Secretary of State.  To sign using DocuSign, a petitioner would have to have an email address and provide that to DocuSign for security and signature confirmation purposes.

organ donation preferences, and other medical information) appearing on State-issued photo identification with an initiative petition would enable the Secretary of State, and anyone with access to the signed initiative petition, to easily associate personal information that is not necessary to verify that the petitioner is a registered voter with a non-anonymous statement of the petitioner's political views.

Doubtless the State could amend its initiative petition framework to also accept some sort of electronic signature as genuine, so long as less-burdensome alternatives were available, but because the steps necessary to create and verify an electronic signature supported by photo identification seem more onerous than simply requiring a petitioner to manually write his or her information and signature on a piece of paper, it is indicative that the wet signature page burden is at least more narrowly-tailored than Plaintiffs' proposed alternative.

Because Plaintiffs have not proposed a more narrowly-tailored alternative than handwritten "wet" signature pages, they have at best demonstrated only a fair chance of success on the merits of their claim that requiring handwritten signature pages is overly-restrictive, and the first *Dataphase* factor precludes entry of a preliminary injunction requiring the Secretary of State to accept electronically-created signatures.

### ii.     In-Person Signatures and Sworn Affidavits

The State requires that a petitioner sign an initiative petition in the presence of a canvasser and that the canvasser sign and swear in the presence of a notary to his or her affidavit attesting to the genuine and compliant nature of the signatures on his or her initiative petition.  Both of these "in-person" requirements and the notarization requirement impose severe burdens on Plaintiffs' core political speech, especially in light of the State-recognized need for social distancing during this pandemic.  Assuming the prevention of fraud during the initiative process is a compelling

interest, these requirements are not narrowly tailored to reasonably achieve that interest.

With respect to any interest the State claims in having a canvasser's affidavit signed and sworn in the presence of a notary, the State elsewhere recognizes that less burdensome alternatives are equally effective at achieving the State's interest in preventing fraud. The unsworn declaration of a foreign declarant who "declare[s] under penalty of perjury under the law of Arkansas" that a declaration is true and correct has the same legal effect under most Arkansas law as any declaration sworn before a notary. *See* Ark. Code Ann. §§ 16-2-201–16-2-208. It is not clear why a domestic unsworn declaration should be any less effective than a foreign one, and whatever deterrent effect swearing in the presence of another may have on fraud, there is slim likelihood that the threat of criminal prosecution for committing perjury is less effective at eliciting truthful statements. The requirement that an affidavit be signed and sworn before a notary, in person or otherwise, is not narrowly tailored.

With respect to having a petitioner sign a petition in the presence of a canvasser, and having a canvasser swear or declare under penalty of perjury to the Secretary of State that the signature was made in his or her presence, the State's interest in preventing fraud is similarly protected in less burdensome fashion by other State law. Arkansas has criminalized petition fraud. *See* Ark. Code Ann. § 5-55-601 (making petition fraud a Class D felony, punishable by up to six years in prison and a fine of $10,000); § 7-9-103 (making knowing falsification on an initiative petition a Class A misdemeanor punishable by up to one year in jail and a fine of $2,500, and mandating that any official charged with verifying signatures for a statewide petition who "has reasonable grounds to believe" that a signature is forged "report the suspected forgery and basis for suspecting forgery" to the Arkansas State Police). Petitioners may not knowingly sign any name other than their own to an initiative petition, sign any initiative petition more than once, or sign an initiative petition

15

when not legally entitled to do so.  Canvassers, sponsors, and sponsors' agents may not sign any name other than their own, solicit signatures from unqualified petitioners, pay anyone to sign the initiative petition, knowingly misrepresent the purpose and effect of the initiative petition in order to induce a petitioner to sign, or file petitions supported by signatures they know to be false.  The requirement that signatures be made in person is overly burdensome in light of these criminal laws that accomplish the same result of preventing fraud and maintaining integrity of the process without the need for personal contact, and so the in-person requirements likely will not be found to be narrowly tailored.

In finding that these criminal provisions are likely adequate to address the State's interest in preventing fraud and maintaining the integrity of the initiative petition process, and finding in-person signatures and affidavits likely to be unnecessarily restrictive, this Court is guided by the unanimous Supreme Court decision in *Meyer*:

> Other provisions of the Colorado statute deal expressly with the potential danger that circulators might be tempted to pad their signatures with false signatures.  It is a crime to forge a signature on a petition, Colo. Rev. Stat. § 1-13-106 (1980), to make false or misleading statements relating to a petition, Colo. Rev. Stat. § 1-40-119 (Supp. 1987), or to pay someone to sign a petition, Colo. Rev. Stat. § 1-40-110 (1980).  Further, the top of each page of the petition must bear a statement printed in red ink warning potential signatories that it is a felony to forge a signature on a petition or to sign the petition when not qualified to vote and admonishing signatories not to sign the petition unless they have read and understand the proposed initiative.  These provisions seem adequate to the task of minimizing the risk of improper conduct in the circulation of a petition, especially since the risk of fraud or corruption, or the appearance thereof, is more remote at the petition stage of an initiative than at the time of balloting.

*Meyer v. Grant*, 486 U.S. 414, 426–27 (1988).  There is no reason appearing in the record that an initiative petition in Arkansas similarly advising petitioners of the acts that constitute petition fraud and effectively admonishing them not to sign unless they have been provided with all necessary petition materials would not similarly be adequate to the task of achieving the State's interests.

### iii.     Dependent Requirements

Given the likely unconstitutional nature of the in-person signature and sworn affidavit requirements, other requirements dependent upon them similarly cannot pass constitutional muster.  For example, Arkansas requires that signatures be obtained only on pages affixed to an initiative petition part that ultimately will be filed with the Secretary of State.  Ark. Code Ann. §§ 7-9-104, 7-9-108.  Because it is over burdensome to require petitioners and canvassers to sign in person, there is similarly no reason to disallow canvassers from distributing an exact copy of the initiative petition materials that would have been circulated in person, along with a signature page, to individual petitioners by means alternative to in-person delivery.  Canvassers could then collect the handwritten signature pages received from those separate petitioners (or small groups of petitioners, as might occur if a family of registered voters were to sign the initiative petition) and consolidate those signature pages as attachments to the appropriate petition part that will be submitted to the Secretary of State (provided the canvassers doing so make an unsworn declaration under penalty of perjury that the signatures were obtained from petitioners who before signing had received, been shown, or otherwise had access to a copy of the initiative petition materials identical to what the canvasser would have provided them if the signature had been obtained in person, and that the copy was provided to petitioners in the same place or manner as the signature page on which the petitioners signed their support).  That is, if petitioners obtain signature pages from an Internet webpage, a copy of the petition materials would need to have been made available on the same webpage.  If petitioners obtain signature pages by mail, a copy of the petition materials would need to be included in the same mailing.   If petitioners obtain signature pages printed in a periodical, a copy of the petition materials would need to be printed in the same periodical.  If petitioners obtain signature pages from a community bulletin board, a copy of the petition materials

would need to be posted on the same bulletin board.

Plaintiffs are likely to prevail on the merits of their claim that State requirements dependent upon in-person distribution of initiative petitions and collection of petitioners' signatures are not narrowly tailored.

## 2.    Remaining *Dataphase* factors

A plaintiff who shows he or she is likely to prevail on the merits of a First Amendment claim generally is presumed to satisfy the remaining *Dataphase* factors. *Minn. Citizens Concerned for Life*, 692 F.3d at 870. A plaintiff who has not made this showing against the government, conversely, is not entitled to a preliminary injunction no matter the outcome of an analysis of the remaining *Dataphase* factors. *Planned Parenthood Minn., N.D., S.D.*, 530 F.3d at 731–32. Therefore, an analysis of those factors is unnecessary for the Court to determine whether to issue a preliminary injunction. An identification of some of the circumstances that would otherwise inform those factors may serve to properly tailor the preliminary injunctive relief the Court will grant, however.

The Secretary of State argues that any preliminary injunction is against the public interest, relying on precedent to the effect that injunctions against State law cause irreparable injury to the State and its people. When that State's law itself is the cause of irreparable injury to the people of the State by unconstitutionally encroaching on their right to engage in core political speech, an injunction against enforcement of that law cannot fairly be said to cause irreparable injury to those people. However, a preliminary injunction that requires the State to depart too drastically from its present framework of requiring handwritten signature pages on an initiative petition might tip the balance of harms so much that the purpose of preliminary injunctive relief is frustrated. The Court hesitates to upend a framework democratically enacted by the people, and must strive to

preliminarily enjoin only those requirements that Plaintiffs have shown are likely unconstitutional, rather than use the injunctive process to impose a framework that appears preferable.

If analyzed in depth, the harms faced by each party would weigh in favor of injunctive relief. The harm faced by the Secretary of State is the possibility that he might place before the voters on the regular election ballot an initiative petition that, when the merits of this suit are resolved, would not have met each technical requirement for placement on the ballot. This is really no harm at all, as rejection by the voters has the same effect as a decision by the Secretary of State not to place the initiative on the ballot, and approval by the voters of an initiative placed on the ballot after "substantial compliance" with State law accords with Arkansas's liberal construction of the right of its people to place initiatives on the ballot by petition. *Fletcher v. Bryant*, 422 S.W.2d 698, 700 (Ark. 1968). The harm faced by Plaintiffs, meanwhile, is that they will be deprived of their right to engage in core political speech that might persuade voters to change the laws under which we live.

Though Plaintiffs move for preliminary injunctive relief only for themselves, requiring the Secretary of State to abandon overbroad requirements when reviewing Plaintiffs' initiative petition, while allowing the Secretary of State to apply those likely unconstitutional requirements to any other initiative petitions circulating, is certainly against the public interest. It creates an appearance that this Court is engaging in its own form of viewpoint discrimination and protecting Plaintiffs' First Amendment rights because of agreement with the content of the core political speech Plaintiffs are communicating, rather than because Plaintiffs are engaging in core political speech. Furthermore, the State has no greater or lesser interest with respect to other initiative petitions presently circulating, and applying the same procedures required by this injunction to all filed initiative petitions will work no hardship on the Secretary of State. Finally, though

speculative at the moment, it is conceivable that the individual Plaintiffs in this action might wish to register their support for another circulating petition, and requiring a separate lawsuit just to piecemeal extend an injunction works against all sound principles of judicial efficiency. Accordingly, though Plaintiffs' challenge is to the initiative petition requirements as applied to them, the Court's injunction will require the Secretary of State to refrain from applying the likely unconstitutional in-person signature and sworn affidavit requirements to any initiative petition filed with him until the preliminary injunction is dissolved.

These considerations in mind, the Court turns to the matter of the injunctive relief that should issue.

### B.      Injunctive Relief

The process by which the Court exercises its discretion when preliminarily enjoining injurious conduct is set out in Federal Rule of Civil Procedure 65.  The Court must state the reasons why a preliminary injunction is issuing (as has been done above), must state the terms of the injunction with specificity, and must describe the acts restrained or required with reasonable detail. Fed. R. Civ. P. 65(d).

The purpose of preliminary injunctive relief is to preserve the status quo and prevent the identified irreparable harm until the merits of a dispute can be resolved, and "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).  "The status quo is the last uncontested status which preceded the pending controversy."  *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958) (cited with approval by *Minn. Mining & Mfg. Co. v. Meter ex rel. NLRB.*, 385 F.2d 265, 273 (8th Cir. 1967)).  Preliminary injunctions "must be narrowly tailored to remedy only the specific

harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022–23 (8th Cir. 2015) (quoting *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam)).  In exercising its discretion to enter a preliminary injunction, the Court possesses flexibility to "mould each decree to the necessities of the particular case" and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  Because issuing a preliminary injunction is an exercise of discretion, the Court need not act mechanically but can choose to act within the range of permissible options. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895–96 (8th Cir. 2013).

In the Court's view, Plaintiffs' proposal that the Secretary of State should be required to accept petitions electronically signed using DocuSign and supported by photo identification is not appropriate for preliminary injunctive relief.  It may be that facts and argument on the ultimate merits of this case demonstrate that requiring the Secretary of State to accept electronic signatures via DocuSign (or in some other fashion) is appropriate, but in light of the narrow tailoring, balance of harms, and public interest concerns the Court raises above in its *Dataphase* analysis, that relief will not issue as part of the preliminary injunction in this case.  An analysis of handwritten personal information and signatures has long been the process used by the Secretary of State to determine that an initiative has actual support from a substantial number of actual registered voters.  Plaintiffs have not shown here that the qualitative differences in verifying handwritten signature pages and verifying electronic signature pages made through DocuSign are so insignificant that requiring the Secretary of State to accept the latter would maintain the status quo and would not tip the balance of harm in the Secretary of State's favor.  Instead, the status quo of handwritten signature pages will remain.

As noted above, however, when the merits of this suit are resolved, numerous requirements surrounding both the in-person witnessing of handwritten personal information and signatures and the in-person swearing before a notary to an affidavit likely will be found overly burdensome and not narrowly tailored to reasonably achieve whatever compelling interest the State may actually have.  No real hardship will fall on the Secretary of State if he must review the typical number of handwritten signatures, though spread across substantially more pages than is typical, or must accept an unsworn declaration made under penalty of perjury, rather than a sworn affidavit, that canvassers have not committed petition fraud and believe the submitted signatures are genuine and belong to registered voters.  The injunctive relief the Court will grant against the Secretary of State with respect to these additional requirements is guided in large part by those same provisions described in the unanimous decision in *Meyer* that lead this Court to find that the State's requirements are not narrowly tailored restrictions on speech.

The Court has reviewed the initiative petition signature page attached as an exhibit (Doc. 7-21) to Plaintiffs' motion.  That signature page appears to follow the suggested form.  *See* Ark. Code Ann. § 7-9-104; Arkansas Secretary of State John Thurston, 2020 INITIATIVES AND REFERENDA HANDBOOK (Rev. Jan. 2020) at 63 (available at https://www.sos.arkansas.gov/uploads/2019-2020_I__R_Handbook_-_Jan_2020.pdf) (last accessed May 24, 2020).  It includes a paragraph at the top addressed to the Secretary of State from petitioners, a section at the bottom left where a canvasser makes his or her sworn affidavit, and a section at the bottom right where a notary public affixes his or her own certifying information.  The Secretary of State may continue to accept signatures in support of initiative petitions that are obtained and verified under the State's present framework.

Until this preliminary injunction is dissolved, or superseded by a permanent injunction, the

Secretary of State must also accept as compliant with Arkansas law any petitioner signatures and signature pages in support of an initiative petition that were not circulated and signed in the presence of a canvasser and any canvasser affidavits that, if unsworn, are declarations made under penalty of perjury, so long as all other requirements that do not conflict with this Court's order are sufficiently met and:

- For those signature pages bearing signatures that were not made by petitioners in the presence of a canvasser, the paragraph at the top of the signature page is replaced with a paragraph that substantially follows the form of the paragraph in Ark. Code Ann. § 7-9-104, and also includes:

> (1) a statement from the petitioner that states that the popular name, ballot title, and text of the initiative were made available to him or her for review prior to signing;

> (2) a statement from the petitioner that demonstrates that he or she understands what acts on his or her part might constitute petition fraud; and

> (3) a statement from the petitioner that if he or she received assistance due to disability in filling out personal information, the person assisting has signed in the margin,

such as the following paragraph (with blanks filled in appropriately):

> To the Honorable John Thurston, Secretary of State of the State of Arkansas: We, the undersigned registered voters of the State of Arkansas, respectfully propose the following amendment to the Constitution of the State, and by this, our petition, order that the same be submitted to the people of said state, to the end that the same may be adopted, enacted, or rejected by the vote of the registered voters of said state at the regular general election to be held on the 3rd day of November, 2020, and each of us for himself or herself says:

> I have personally signed this petition; I am a registered voter of the State of Arkansas, and my printed name, date of birth, residence, city or town of residence, and date of signing this petition are correctly written after my signature.

The popular name, ballot title, and text of the initiative were made available to me for review before I signed this petition.

I understand that it is a crime to sign a name other than my own to this petition, to sign a petition in support of this initiative more than one time, or to sign this petition when I am not legally entitled to do so.  If due to disability I required assistance writing my printed name, date of birth, residence, city or town of residence, county of residence, or date of signing, the person who assisted me has signed and printed his or her own name in the margin of the petition next to my signature line.

The popular name is _____ and the ballot title is _____.

and;

- For those signature pages that are not signed and sworn by the canvasser before a notary public, the affidavit section for the canvasser instead reads:

Canvasser's Unsworn Declaration Under Penalty of Perjury

I, _____, declare under penalty of perjury under the law of Arkansas that to the best of my knowledge and belief, each of the foregoing persons signed his or her own name to this sheet of the petition, each signature is genuine, and each signer is a registered voter of the State of Arkansas, in the County listed.  To the best of my knowledge, this signature sheet was provided to each signer in a manner that also provided to him or her an exact copy of the popular name, ballot title, and text of the initiative.  I am familiar with the acts by canvassers and sponsors that are criminalized under Ark. Code Ann. § 5-55-601 and Ark. Code Ann. § 7-9-103, and have committed none of those acts.  My current residence address is correctly stated below.
Signature _____
Current Residence _____
Indicate one:(__) Paid Canvasser (__) Volunteer/Unpaid Canvasser

In all cases where the Secretary of State reasonably believes his duties are ambiguous or otherwise not sufficiently clear because of the interplay of the injunctive relief ordered herein, the Court's findings on the likely unconstitutional nature of the in-person signing and sworn affidavit

24

requirements of Arkansas law, and the unenjoined requirements of Arkansas law, he should interpret the law and this injunction in a way that causes him not to reject initiative petition signatures, signature pages, or petition parts because they were not signed in the presence of the canvasser or because the canvasser's unsworn declaration was not sworn in the presence of a notary.

If, whether due to oversight, misunderstanding, inartful drafting, or for some other reason, the terms of this injunctive relief contain some substantive error that a party believes will prevent compliance with the Court's order or otherwise will require the Secretary of State or some other person or entity to do or not do some act that is contrary to the Court's findings, that party must notify the Court immediately.

The parties are encouraged to confer and agree on any additional or supplemental terms they believe may be necessary to give effect to the Court's findings, and if they are in agreement as to those terms but require a Court order to implement them, should so inform the Court as soon as practicable.

## III.    Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion for preliminary injunction (Doc. 5) is GRANTED IN PART as stated herein.

IT IS FURTHER ORDERED that the parties confer on a proposed schedule  to  expedite final resolution of this lawsuit and to communicate that proposal to the Court by May 28, 2020.

IT IS SO ORDERED this 25th day of May, 2020.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE