UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BONNIE HEATHER MILLER;
ROBERT WILLIAM ALLEN;
ADELLA DOZIER GRAY; and
ARKANSAS VOTERS FIRST                                                              PLAINTIFFS

v.                                              No. 5:20-CV-05070

JOHN THURSTON, in his official
capacity as Secretary of State of Arkansas                                          DEFENDANT

**OPINION AND ORDER**

On May 25, 2020, the Court entered an order (Doc. 41) granting in part Plaintiffs' motion for preliminary injunctive relief. On May 29, 2020, the Court converted the preliminary injunction into a permanent injunction (Doc. 45) following notice by the parties that they agreed the preliminary injunction should be made permanent. On June 1, 2020, the Secretary of State filed a notice of appeal (Doc. 47), the instant motion (Doc. 48) to stay the injunction pending appeal, and a brief (Doc. 49) in support. The motion to stay also requests that the Court order Plaintiffs to file an expedited response. No response is necessary. The motion to stay pending appeal will be DENIED.

"While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). "A stay is not a matter of right," but "is instead an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672-73 (1926) (internal alterations omitted)). "The party requesting a stay bears the burden of showing that the

circumstances justify an exercise of that discretion." *Id.* at 434.

> [T]he factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). The Court must "consider the relative strength of the four factors, balancing them all." *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994). Though the most important factor is typically likelihood of success on the merits, where there is clear evidence of injury to one party, the balancing "should result in a less stringent requirement of certainty of victory." *Brady*, 640 F.3d at 789 (quoting Developments in the Law, Injunctions, 78 Harv. L. Rev. 994, 1056 (1965)). Even then, the party moving for stay must do more than merely allege that injury is possible; it must show that irreparable injury is likely to occur unless a stay is granted. *Nken,* 556 U.S. at 435; *Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986).

With respect to the first factor, the Secretary of State makes no showing that he is likely to succeed on the merits of his appeal. In a First and Fourteenth Amendment challenge to a State's initiative petition process, the Court first determines the character of any burden on speech imposed by the State's requirements, and then determines how to weigh that burden against the State's interests. "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*,

460 U.S. 780, 788 (1983)).  This is the *Anderson/Burdick* test applied by the Court.  Where, as with the in-person signature and sworn affidavit requirements for initiative petitions, a state law substantially burdens core political speech, the law must be narrowly tailored to reasonably achieve a compelling state interest, or its application is unconstitutional.  Where, as with the requirement for handwritten signatures, the filing deadline, and the number of petitioners necessary for ballot access, the law does not substantially burden core political speech, some lesser level of scrutiny applies, whether intermediate scrutiny or rational basis review.  The Secretary of State disagrees with the Court's finding that the State's initiative petitions requirements of in-person signatures and sworn affidavits burden speech, and so he believes lesser scrutiny applies.  That is the basis for an argument that the Court reached the wrong result under the *Anderson/Burdick* test, not for an argument that the test does not apply, and the latter argument is unlikely to succeed on appeal.

The former argument, too, is unlikely to succeed.  The Secretary of State initially seems to argue that because there is no independent First Amendment right to an initiative petition process, which is State-created, the State has near-plenary authority over the process and its regulations can never implicate the First Amendment.  If the Secretary of State is taking this absolutist position, the Court of Appeals is unlikely to agree with him.  There is no independent First Amendment right to a State Capitol building, but once the State has built it, the First Amendment extends some protection to the speech that occurs on its steps.  Similarly, there is no independent First Amendment right to a State initiative petition process, but once the State has created it, the courts have made it clear that the First Amendment extends some protection to the speech communicated during that process.  *See Meyer v. Grant*, 486 U.S. 414, 421 (1988) ("The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion

3

of the merits of the proposed change.").

The Secretary of State argues in the alternative that the Court erred when it found that requiring in-person signatures and sworn affidavits imposes a burden (substantial or otherwise) on speech, and that instead these are merely regulations on the mechanics of the process. Requiring that support for an initiative petition be registered with the Secretary of State by an action of some kind is a regulation on the mechanics of the process—the State requires that a minimum number of handwritten signatures filed with the Secretary of State by a certain deadline. Requiring those signatures to be made in-person and those signature pages to be supported by affidavits sworn in person goes beyond regulation of the mere mechanics of the process, however, into dictating the manner in which the attendant core political speech is communicated. Under the *Anderson/Burdick* test, the Court was required to determine how much of a burden this imposed on the core political speech inextricably intertwined with the initiative petition process, and how much scrutiny to apply. Because the burden affects core political speech, because it does so by limiting to one the circumstances under which that particular type of core political speech can occur, and because the Secretary of State made no argument and presented no evidence that would support a finding that its process could survive some heightened scrutiny, the Court determined on the facts before it that the burden was likely to be substantial and issued a preliminary injunction.

No subsequent development has occurred in this case that suggests the Court's findings were wrong. A law imposing a substantial burden might still have been permissible if the Secretary of State demonstrated that the State's interests were compelling enough to justify the substantial burden and the State's law was appropriately tailored to the interest and burden. The Secretary of State chose to attempt neither of those things, offering no evidence that fraud was likely to affect Arkansas initiative petitions or that the integrity of the process would be undermined—a risk that

seems quite low with respect to initiative petitions, *see Meyer*, 486 U.S. at 427—and no argument that the State's laws were narrowly tailored. Instead, the Secretary of State agreed that the injunction against the unconstitutional requirements of Arkansas initiative petition law should be made permanent, leaving the Court's analysis of other cases to determine the outcome of this one.

The Court gave the Secretary of State the benefit of a presumption that he could show at the merits stage that the State's interests were compelling, and looked to analogous cases where other laws were or were not narrowly tailored to determine whether these laws were. The Court then crafted an injunction focused on addressing only those requirements it found to be unconstitutionally burdensome restrictions on core political speech. The Secretary of State might succeed on an appeal of that injunction, but he has made no showing on this motion that is the likely outcome. This factor weighs against a stay.

The remaining factors also weigh in favor of denying the instant motion. The Secretary of State makes no showing that irreparable injury either to him or to the State is likely if the injunction is not stayed. If the Court is reversed on appeal and the injunction modified or dissolved, then the Secretary of State will find himself excused from the injunction's requirements. If the Court is affirmed on appeal, then the Secretary of State and the State suffer no injury because the injunction works no actual injury to either, irreparable or otherwise. Initiative petitions must still be filed by the regular deadline so that the Secretary of State has adequate time to carry out his duties. Initiative petitions must still be supported by the regular number of signatures so that the Secretary of State may see that they are supported by a number of registered Arkansas voters substantial enough to justify placing the initiative on the ballot. Initiative petitions must still be supported by signatures made by hand so that the Secretary of State can determine they are made by unique individuals, rather than fraudulently mass-produced by a nefarious canvasser or sponsor.

Signature pages must still be submitted only by canvassers who make a solemn representation, with full awareness of the legal penalties for dishonesty, that they have committed no petition fraud. The preliminary injunction only prevents the Secretary of State from rejecting signatures simply because they were not signed in the person of a canvasser, who then swore to an affidavit in the presence of a notary.

From the Secretary of State's perspective, the process as enjoined is indistinguishable from the original process.[1] The difference of note is that the process as enjoined protects the core political speech of the people of Arkansas and enables more registered Arkansas voters to engage in the initiative process than otherwise would be able to do so without affecting the mechanics of the Secretary of State's duties or disregarding the State's interests following the filing of an initiative petition. *Contra Thompson v. Dewine*, --F.3d--, 2020 WL 2702483, at *1 (6th Cir. May 26, 2020) (staying injunction that not only required Ohio to accept unwitnessed signatures but altered mechanics of the initiative petition process by requiring Ohio to accept electronic signatures and extend its initiative petition filing deadline). Unburdening the constitutional rights of the people of Arkansas while placing no additional burden upon the State of Arkansas does not injure the State, especially when the Secretary of State has no evidence to demonstrate that fraud is likely to occur or that the integrity of the initiative petition process is otherwise at risk from enabling people to engage in the core political speech involved in the signing of initiative petitions in other ways than person-to-person contact.

---

[1] The Secretary of State argues in his brief that "[A]n injunction 'seriously and irreparably harms' a State any time it wrongly 'bars the State from conducting elections pursuant to a statute enacted by the Legislature.'" (Doc. 49, p. 8) (quoting *Abbot v. Perez*, 585 U.S.--, 138 S.Ct. 2305, 2324 (2018)). The injunction does not interfere with the State's elections, at which the voters remain free to enact or reject an initiative that receives enough support under this process for ballot placement. The injunction reaches only the initiative petition process.

If a stay is granted, however, it would work irreparable injury to Plaintiffs, as well as supporters of any other initiative petition.  If the Court is affirmed on appeal, then for the duration of the stay initiative petition supporters would remain burdened by unconstitutional laws and would be prevented from engaging in core political speech surrounding initiative petitions.  The Secretary of State and the State suffer no injury if the injunction is effective now, and the Plaintiffs and all interested petitioners who might benefit from the injunction will suffer irreparable injury if the injunction is stayed.  These factors weigh against a stay.

Finally, the public interest weighs heavily against a stay.  In defining the public interest in this case, the Court primarily looks to the State's own laws surrounding the initiative petition process, which the State's court's will "give a liberal construction and interpretation . . . in order to secure its purposes to reserve to the people the right to adopt, reject, approve or disapprove legislation." *Fletcher v. Bryant*, 422 S.W.2d 698, 700 (Ark. 1968).  If a stay is granted and the Court is affirmed, petition supporters would be left with insufficient time to exercise their rights in conjunction with the initiative petition process, frustrating the State-recognized public interest in allowing Arkansas voters to directly enact or reject the laws that bind them.  No adequate terms under Rule 62 can be crafted to protect petitioners from the continued violation of these rights during the pendency of an appeal without actually encroaching on the mechanics of the State's process, such as by extending the filing deadline by whatever period of time is necessary for the Secretary of State to pursue his appeal.  The public has an interest in engaging in the core political speech surrounding initiative petitions even if an appeal is ongoing, and the substantial burden imposed by maintaining the in-person signature and sworn affidavit initiative petition requirements discourages the public from doing so.

This is not a case where one party will be overly burdened no matter how the Court rules.

*Cf. Brady*, 640 F.3d at 793 ("[T]his is a case in which one party or the other likely will suffer some degree of irreparable harm no matter how this court resolves the motion for a stay pending appeal."). Rather, the burden and risk fall disproportionately on Plaintiffs and all others engaged in the initiative petition process. The public interest weighs against a stay.

    IT IS THEREFORE ORDERED that the Secretary of State's motion (Doc. 48) to stay pending appeal is DENIED.

    IT IS SO ORDERED this 2nd day of June, 2020.

    */s/ P. K. Holmes, III*
    P.K. HOLMES, III
    U.S. DISTRICT JUDGE